UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | |
|---|---|
| Sylvia Bayley, | ) |
| | ) Case No. 1:13-CV-002 |
| Plaintiff, | ) |
| | ) |
| vs. | ) COMPLAINT |
| | ) |
| MDU Resources Group, Inc., | ) |
| | ) |
| Defendant. | ) |

For her complaint against MDU Resources Group, Inc., the Plaintiff, Sylvia Bayley, states the following:

1.

VENUE

Venue is properly in the United States District Court for the State of North Dakota under 28 USC § 1391. The claim upon which this action is based occurred in Burleigh County, North Dakota.

2.

PARTIES

The Plaintiff in this action is a resident of Bismarck in Burleigh County, North Dakota. Defendant is a corporation registered to do business in North Dakota with its principal corporate offices located in Bismarck, North Dakota.

1

3.

## JURISDICTION

Jurisdiction of the Federal District Court for this action is based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e) et seq; 31 U.S.C. Section 3730(h); 28 U.S.C. 1331; 28 U.S.C. 1343 (a) (3); 42 U.S.C. 1983 and 29 U.S.C. 626(b).

4.

## GENERAL ALLEGATIONS

Plaintiff commenced employment with the Defendant on January 2, 1990 and continued her employment until she was involuntarily terminated on January 18, 2012. During those 22 years Plaintiff's job title was that of an accountant. Plaintiff's primary job responsibility while employed by Defendant was that of a property tax analyst.

5.

## FIRST CAUSE OF ACTION

AGE DISCRIMINATION: At the time Plaintiff was involuntarily terminated she was 52 years of age. On a number of occasions during the years 2009 to 2011 her immediate supervisor, Richard Holland, made statements to Plaintiff and others in the Tax and Compliance Department that three employees in that department, including plaintiff, were close to 50

years of age and that he needed to hire someone younger to work in that department. These express statements of Plaintiff's supervisor provide the most reasonable explanation for his actions in terminating her employment. None of the reasons that have been put forth as justification for Plaintiff's termination have a reasonable basis in fact and are contrary to Defendant's own policies and employment contract with its employees.

6.

## SECOND CAUSE OF ACTION

SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT: During the time of her employment Plaintiff's supervisors carried out a pattern of harassment of her. Such conduct included shouting at her, use of offensive language, and sarcasm intended to embarrass her in the presence of fellow employees.

Plaintiff was also harassed in writing by accusations of violating company policy in failing to give sufficient advance notice of intention to take vacation time when in fact the record shows advance notice was always given and was approved by Plaintiff's supervisors.

Plaintiff was also harassed and accused of not having followed company procedures when she ordered an ergonomic office chair that her doctor had advised she should be using. Plaintiff has documentation that

3

shows she followed company protocol and that she had submitted her doctor's statement to her supervisors as she was supposed to do.

Plaintiff was also subjected to a hostile work environment by her supervisor's dissemination of emails containing vulgar and offensive language and were also demeaning to women including emails dated 7/20/2010, dated 11/24/2010 and emails dated 7/15/2008. Company policy states that to provide all employees a positive work environment that is free of sexual and all other forms of harassment the corporation will not tolerate verbal or physical conduct of a sexual nature by any supervisor, employee, agent, contractor or customer that harasses, disrupts or interferes with an employee's work performance or that creates an intimidating, offensive or hostile work environment. On October 27, 2011 plaintiff expressly asked her supervisor Randy Watson to stop demeaning her after he had yelled at her in the presence of co-employees.

On May 20, 2011 Plaintiff was subjected to a hostile work environment when she was instructed by her supervisors, Randy Watson and Richard Holland that she was not allowed to contact others within the company to ask about company processes. Company policy states, "An effective and responsive organization relies on knowledgeable and informed individuals throughout the organization. It is the responsibility of every

4

individual to seek out the information they need and to willingly provide information to others in a positive and open manner. Managers, as leaders, are responsible for providing a positive and supportive work environment that encourages individual responsibility and initiative. Individual employees are responsible for taking advantage of the opportunities available to them, both inside and outside the organization, and for working toward a positive change when they have a better idea."

Plaintiff was further harassed by allocation of workload to her in a manner that could only have had as it purpose a desire to have her to leave the company. A 2010 performance review noted she had a heavy workload and a 40 hour work week. In spite of said fact shortly thereafter more work was assigned to her to be performed during her 40 hour week and the work assigned were duties that had been assigned to another employee who worked only a 32 hour work week.

Plaintiff was further harassed when her 2011 Performance Review was not kept confidential as required by the company's policy document which promises "Performance appraisals are held confidential between the company and employees." Plaintiff's performance review was left exposed and available to fellow employees on two separate occasions, 1/10/12 and 1/17/12. On the occasion of 1/17/12 an email was sent to all of the

5

employees of the Department by Plaintiff's supervisor stating that she would not be in the office that entire day which gave free access to her openly exposed Performance Review to all employees. This Performance Review labeled plaintiff's performance as "Marginal" its lowest designation. This review came during a period of time when plaintiff was obviously targeted for termination. Prior to this "Marginal" review all of her previous reviews from 2003-2010 had been rated "Proficient", "Thoroughly Satisfactory", "Commendable" or "Exemplary".

Plaintiff was further harassed by email from her supervisor Richard Holland on 3/21/11 wherein he noted that his daughter was hosting a home party where retail sales would be made and suggesting that big raises would be in store for those who attended. It ended with a statement, "Please attend". Plaintiff did not attend and 2011 was the first year in 20 years of employment with the company that she did not receive a wage increase.

7.

## THIRD CAUSE OF ACTION

DEFAMATION: Plaintiff's supervisors, Richard Holland and Randy Watson, have made false statements about the Plaintiff and disparaging remarks about her performance and conduct. In support of her termination accusations were made that Plaintiff had committed 71 errors during 10

months of 2011. It has been acknowledged by her supervisor that most of these alleged errors related to incorrect property tax estimates that Plaintiff was required to make as a part of her job duties. In fact the estimates she submitted to her supervisors for approval to comply with this job requirement were challenged by her supervisors as incorrect and consequently were changed by them before being sent on to their superiors. The estimates thus became the supervisor's estimates. In spite of the fact the errors were the supervisor's errors they have acknowledged that most of the 71 errors claimed to be the basis of her termination were her errors in making these tax estimates. Her supervisors were then asked by their superiors for explanation as to why these estimates (which they themselves had made) were so far off from what the actual tax turned out to be. Termination based on a claim that she erred in making tax estimates was unfair and misleading but her termination has seriously affected her employability in her area of skill, experience and prior employment. To the extent any of the errors among the 71 alleged did exist they were not serious enough to justify termination after 21 years of exemplary service and consideration should have been given to the fact that during this period of time she was diagnosed with cancer and she was flooded out of her home.

8.

## FOURTH CAUSE OF ACTION

RETALIATION: Plaintiff followed company protocol and policy in all of her actions including submission of reports to superiors that were only intended to better the company, save it money, and improve its efficiencies. In doing so at all times she adhered to policies for employee input encouraged by the company and did so through the established chain of command. Retaliation against Plaintiff for making suggestions for improvement and efficiency in company work flow commenced sometime in 2011. In November of 2011 she was told she must submit to a 30-day Performance Improvement Plan (PIP) allegedly based on a finding she had made 71 errors in the previous 10 months. She was not told what these alleged errors were. On 12/5/11 her performance review states that her improvement and compliance with the 30-day plan had been met. Again on 1/13/12 a review states, "The results at the end of the 30-day period were positive and we look to see this level of performance continue." Her Notice of Termination dated five (5) days later, however, states "Improvement was shown in that four week period; however, since that time you have failed to sustain an acceptable level of job performance, as explicitly called for in the PIP (Performance Improvement Plan)." In fact Plaintiff was never advised

8

that she had "…failed to sustain an acceptable level of job performance, as explicitly called for in the PIP." From the dates of the reviews that found her performance was in compliance with the Performance Plan that had been devised for her to the date of her termination she was never advised of any deficit in her performance or of any other problem the company might have with her conduct. Her termination was obviously based on factors other than the 71 alleged errors and was based on age discrimination, upon the suggestions she had made for improving company efficiencies and upon her complaint of being subjected to demeaning and harassing actions by her superiors.

9.

FIFTH CAUSE OF ACTION

BREACH OF EMPLOYMENT CONTRACT: Plaintiff's employment contract with defendant included a covenant of good faith that its Policies and Procedures when followed by the employee would not become the basis of termination or sanctions. Plaintiff was terminated for conduct that was not only permitted under these Policies but was actually encouraged.

WEREFORE, Plaintiff requests damages against Defendant as follows:

1. For loss of income, both salary and bonuses.

9

2. For loss of insurance benefits.
3. Payment of all amounts she has lost due to non-payment of salary and benefits during the period of her unemployment.
4. For libel, slander and damage to personal and professional reputation.
5. Payment of all her attorney fees, expenses and other disbursements attributable to her termination and this litigation.
6. Such other and further relief as may be equitable and just.

## JURY DEMAND

Trial by jury of 6 is demanded.

Dated this 3rd day of January 2013.

IRVIN B. NODLAND, PC
Attorneys for Plaintiff
109 North 4th Street Suite 300
PO Box 640
Bismarck ND 58502-0640

BY: IRVIN B. NODLAND
State Bar ID No. 02729